## Case No. 2,934.

COCKS v. IZARD et al.

[4 Am. Law T. Rep. U. S. Cts. 68.]

Circuit Court, D. Louisiana. March, 1871.

ALIEN ENEMY — RIGHT TO SUE IN ENEMY COUNTRY—PRINCIPAL AND AGENT — EXECUTION SALE —PROMISE TO RECONVEY.

1. An alien enemy may sue and be sued in the courts of the enemy country.

2. The authority of an agent is not affected by war, and proceedings had against an agent during a state of war, to which the principal could not answer by reason of the existence of war, are valid, and hold the principal.

[3. An oral promise by a purchaser on execution sale to reconvey to the debtor, upon reimbursement of his advances and charges, is not enforceable in equity.]

[See note at end of case.]

WOODS, Circuit Judge. On the 24th day of March, 1863, Robert Anderson, a citizen of the state of New York, and a general in the United States army, brought an action in the United States provisional court for the state of Louisiana, against John G. Cocks. The plaintiff in that suit alleged that defendant was indebted to him in the sum of $8,840, being the balance due on certain promissory notes executed by defendant, and of which plaintiff was the holder, and including certain costs incurred by plaintiff for which defendant was bound. The citation was returned "served on defendant at his last place of residence, No. 192 Canal street." A citation was also served on Charles Hyllested, who the petitioner averred was the duly authorized agent of the said defendant, and authorized to represent him and stand in judgment for and against him. Defendant having made default on the 30th day of May, 1863, judgment was rendered against him in favor of the plaintiff for $8,440. Upon this judgment a writ of fieri facias was issued on the 25th day of November, 1864, which was levied on two improved lots in the city of

New Orleans, of which the defendant was seized in fee, and after appraisement and advertisement, the same were sold at public auction, by the marshal of said court, to Charles Izard, one of the defendants in this case. By virtue of a subsequent judicial proceeding and sale, Paul H. Lewis, the other defendant, became vested with all the title of Izard to the premises. John G. Cocks, who, at the time of these proceedings against him, alleges that he was a citizen and resident of the state of Mississippi, files his bill in equity against Izard and Lewis, the object and prayer of which is that they may be compelled to convey to him the property sold under said judgment, that an account of the rents and profits may be taken, and if any balance shall be found due to plaintiff after deducting the amount paid by Izard for the property, he may have a decree therefor.

In support of prayer, the complainant in his bill alleges: 1. That the said United States provisional court was not a legal court, and that, therefore, the judgment and proceedings thereunder were absolutely void. 2. That no legal service of the citation in the case of Anderson v. Cocks was made on complainant. 3. That, at the sale of the property by the marshal of the provisional court, the defendant, Izard, gave out that he was bidding on said property on account of the complainant, for which reason persons who were in attendance refrained from bidding, because they did not desire to compete with complainant, whereby competition was prevented and the property sold at rates greatly disproportioned to its actual value. 4. That, after the sale, Izard promised to reconvey the property to complainant upon reimbursement of his advance and charges, which conveyance he has failed to make.

I do not understand that the first ground on which the prayer for relief is based, is still insisted on by complainant: that, in the case of The Grapeshot, 9 Wall. [76 U. S.] 129, the supreme court of the United States has held that the United States provisional court of Louisiana was a lawful and constitutional court. We may, then, consider that point as out of the case. But it is claimed that no service of the citation or summons was made upon Cocks, the defendant in the suit before the provisional court, nor upon his agent duly authorized to receive service by the state law. It appears from the record that the citation was twice served—once, as the return of the marshal shows, by leaving a copy at the last place of residence of said Cocks, No. 192 Canal street, and once by delivering a copy to Charles Hyllested, the agent of said Cocks. The attempted service at the domicil is clearly ineffectual and void. The Code of Practice (section 189) requires that when service of citation is made at the domicil, it shall be by copy left at the usual domicil or residence of the defendant. The return of the marshal does not show that the citation was so served, and the proof shows clearly that the

house No. 192 Canal street was not the domicil or residence of Cocks. It is admitted, however, that service was made on Charles Hyllested, who, defendants aver, was duly authorized to receive service from Cocks. If Hyllested was the duly-authorized agent of Cocks to receive service or process, or to defend suit, the service upon him might be a good service. Section 196 of the Code of Practice provides that if the person absent has an attorney in fact, whose name appears in the petition, the sheriff shall make service on the attorney in fact. But complainant says that the procuration, or power of attorney held by Hyllested, did not authorize him to receive service, or appear and defend suits against his principal. I have examined this power with some care, and am clear that the authority to appear and defend suits against the principal is conferred upon the agent. It appoints Hyllested as the true and lawful attorney in fact of Cocks, giving him full power and authority to manage and transact, all and singular, the affairs, business, and concerns of the principal in the city of New Orleans and state of Louisiana, of every nature and kind, without any exception or reservation whatever; to open and answer letters, sign and indorse the name of the principal on promissory notes or bills of exchange; to appear before all courts of law and equity, there to do and prosecute, as occasion shall require, or to compromise, compound, or agree in the premises by arbitration or otherwise; and, generally, to do and perform all and every other act, matter, and thing whatsoever, as shall or may be necessary or requisite, touching or concerning the affairs, business, and concern of the principal, as fully, amply, and effectually, and to all intents and purposes and with the same validity as if all and every such act, matter, or thing were or had been particularly stated, expressed, or especially provided for, as he, the said principal, could or might do if personally present. It is difficult to see how broader powers could be conferred on an agent, or to escape the conclusion that Cocks intended to authorize his attorney in fact to appear and defend actions against him. In Fuselier v. Robin, 4 La. Ann. 61, it was held by the supreme court of this state that the power to represent a principal in the defence of actions must result from the express terms of the instrument, or from an implication so clear as to be irresistible. I think, in this case, the implication is irresistible. But complainant says that, at the time of service on his attorney in fact, he was within the confederate lines; that communication with his agent, who was within the federal lines, was forbidden, and, therefore, the agency ceased, and to support this view cites article 2996, Civ. Code.

This article provides that procuration expires by change of the condition of the principal, or the seclusion or interdiction of the agent or principal. I do not think that this

article touches the question. By a change of condition is meant such a change of state as produces an incapacity in either party. Thus, if an unmarried woman should, as principal, execute a power of attorney, or give any other authority to an agent, and afterwards should marry, the marriage would ipso facto amount to a revocation of the power. This proceeds upon the principle that the derivative authority expires with the original from which it proceeds. The bankruptcy of the principal is another illustration of what is meant by change of condition. By seclusion I understand this article to mean religious seclusion—the taking of such religious vows as makes the party civiliter mortuus. It is strange that such a provision should be found in the Code of Louisiana. That it was inadvertently incorporated into the jurisprudence of this state from the civil law I think clear. Interdiction occurs when a party becomes non compos mentis, and the law interferes and places his affairs in the hands of a curator or guardian. This article of the Code does not therefore apply. Although the Civil Code does not, in my opinion, by its provision revoke the power of the attorney under the circumstances of this case, yet there remains the question whether or not the state of war operated to effect such revocation, the principal and agent being citizens and residents of the countries at war with each other. I understand the rule of law to be this:—That when before the declaration of war, or commencement of hostilities, a principal in one country creates an agent in another, the agency continues notwithstanding the subsequent outbreak of war between the two countries, for all lawful purposes not forbidden by the laws of war. The agent of an alien enemy is not authorized by the state of war to abandon, or destroy, or squander the property of his principal. It is his duty to preserve it and protect it. He may receive money due his principal, and give acquittances therefor, and he may carry out and fulfill any lawful contract of his principal. 19 Johns. 139; [Ward v. Smith] 7 Wall. [74 U. S.] 452; [U. S. v. Grossmayer] 9 Wall. [76 U. S.] 74. It has even been held that the subjects of an enemy nation, ordered away in consequence of war, are entitled to leave a power of attorney, and to collect debts by virtue thereof. Emerigon, Traité des Assurances, tom. 1, p. 567. The power of attorney given by Cocks to Hyllested was not revoked by the war.

But another question still remains in this branch of the case, namely: Can an alien enemy be sued in the courts of the country in which his own is at war? For, if a suit would not lie against Cocks on account of his enemy's character, if he were present in person, and personally served with process, a fortiori, it would not lie when the service was upon his attorney in fact. There has been some slight conflict of authorities on the question whether an alien enemy could sue in the courts of the enemy country. But it appears to be now well settled that he can sue, and, as a consequence, that he can be sued. In Sparenburgh v. Bannatyne, 1 Bos. & P. 163, it was held in the common pleas at Westminster that an alien under the king's protection, even if he were a prisoner, might sue and be sued. This point has long before been decided in Wells v. Williams, 1 Ld. Raym. 282. So in Clarke v. Morey, 10 Johns. 69, it was held by Kent, C. J., upon a plea of alien enemy, that an alien or subject of Great Britain, who came to reside in the United States after the breaking out of the war between the United States and Great Britain, might, during the war, sue and be sued, as in time of peace. If an alien enemy is served with process, or submits to the jurisdiction of the court, there is no rule of public policy which forbids a suit against him. The policy of the laws of war forbids any intercourse between the belligerents, or that money or other resources shall be transferred so as to strengthen the enemy. But when an alien enemy has left an agent upon whom process can be served, there is no reason why suit should not be brought against him; for it does not necessitate intercourse, nor does it tend to strengthen the enemy. On the contrary, its effect is in the other direction.

I am of opinion, therefore, that the power of attorney from Cocks to Hyllested continued in force, notwithstanding the war; that the power of attorney authorized Hyllested to receive service of process for his principal, and to defend actions brought against them, and that, under the Code of Practice of this state, the service upon Hyllested, the attorney, was a good service upon his principal. It follows, therefore, that the judgment of the provisional court in favor of Anderson, and against Cocks, was a valid judgment. Nevertheless, if Izard, being the tenant of Cocks, gave out and let it be understood that he was bidding for the property sold under the judgment of Anderson at the time of the auction, for account of Cocks and in his interest, and persons in attendance, who were ready and willing to bid more for the property than the price at which it was sold to Izard, refrained from bidding, not willing to compete in bidding with Cocks or any person who was understood to represent him, and thus competition was prevented and the property sold for a grossly inadequate price, then the sale was a fraudulent one and ought to be set aside. It has been so decided by the supreme court of the United States. Cocks v. Izard, 7 Wall. [74 U. S.] 559. So that the question is presented for decision: Does the proof establish the alleged fraudulent practice of Izard? The answer of Izard is under oath. It is true that the bill waives an answer under oath; but such waiver is not authorized by any rule of the United States courts sitting in equity, nor has there been any order of this court directing that the answer of the defendant be received without oath. Under these circumstances, the defendant has the right to

answer under oath, and to make his answer testimony. To overcome the denial of the answer responsive to the bill, there must be the testimony of two witnesses, or one witness and strong corroborating circumstances. I have examined the evidence in this case, and am satisfied that the charge of fraudulent practices on the part of Izard with respect to this sale is not affirmatively established. As to the last ground on which the plaintiff bases his prayer for relief—namely, that Izard promised to re-convey the property to complainant upon reimbursement of his advances and charges—it is sufficient to say that this alleged contract not being in writing, even if satisfactorily proved, cannot be in force in a court either of law or equity. The complainant having failed to establish any of the grounds for the relief prayed, his bill must be dismissed at his costs. Decree accordingly.

[NOTE. On appeal by complainant, the supreme court reversed the decree of the circuit court, and remanded the case. on the ground, as set forth in the opinion of Mr. Justice Davis, that Izard, the tenant of complainant, obtained possession of the property by unfair practices which prevented intending purchasers from bidding at the sale, and thus enabled him to acquire the property at a sum hardly equal to its yearly rental value. and that the failure of complainant to apply summarily to set aside the sale, and for a resale, did not forfeit his right to redress in equity according to the prayer of the bill. Cocks v. Izard, 7 Wall. (74 U. S.) 559.]